STATE OF NORTH CAROLINA v. MARCIANA ELLIS

No. COA04-436

(Filed 1 March 2005)

1. **Arrest— resisting, delaying, or obstructing an officer— indictment—failure to describe duties officer discharging or attempting to discharge**

   The bill of indictment used to charge defendant with resisting, delaying, or obstructing an officer under N.C.G.S. § 14-223 was insufficient as a matter of law, because: (1) an indictment fails under N.C.G.S. § 14-223 if it does not describe the duty the named officer was discharging or attempting to dis-

charge; and (2) the pertinent indictment failed to describe the duties the alcohol law enforcement agent was discharging or attempting to discharge.

**2. Prisons and Prisoners— malicious conduct by prisoner— motion to dismiss—sufficiency of evidence—custody**

The trial court did not err by denying defendant's motion to dismiss the charge of malicious conduct by a prisoner based on alleged insufficient evidence of defendant being in custody, because: (1) the Fourth Amendment "free to leave" test is to be applied to determine whether an individual was in custody under N.C.G.S. § 14-258.4; and (2) substantial evidence shows that at the moment defendant smeared fecal matter on an officer, a reasonable person would have believed that he was not free to leave.

**3. Prisons and Prisoners— malicious conduct by prisoner— instruction—custody**

The trial court did not err by instructing the jury· on the custodial element of malicious conduct by a prisoner, because: (1) the test is whether a reasonable person would have felt free to leave under the circumstances; and (2) in light of the "free to leave" test concerning the custody element of N.C.G.S. § 14-258.4, defendant has failed to show, and a review of the record and transcript do not indicate, that the instructions to the jury were misleading.

**4. Sentencing— Level IV offender—stipulation to worksheet of prior convictions**

The trial court did not err in a malicious conduct by a prisoner, possession of cocaine, resisting and obstructing a law enforcement officer, and assault on a law enforcement officer case by determining that defendant was a Level IV offender for sentencing purposes, because: (1) N.C.G.S. § 15A-1340.14(f) provides that a prior conviction can be proved by stipulation of the parties; (2) the State tendered defendant's prior conviction worksheet to the trial court and defense counsel stipulated to it; and (3) the trial court offered defendant an opportunity to address the court, which defendant did, and defendant did not object or refer to his prior convictions.

Appeal by defendant from judgments entered 31 July 2003 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 7 December 2004.

**STATE v. ELLIS**

[168 N.C. App. 651 (2005)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Pitman, for the State.*

*Charns & Charns, by D. Tucker Charns, for defendant-appellant.*

TYSON, Judge.

Marciana Ellis ("defendant") appeals from judgments entered after a jury returned guilty verdicts of: (1) knowingly and willfully emitting human excrement at a law enforcement officer in the performance of his duties (malicious conduct by prisoner) (02 CRS 013682); (2) possession of cocaine (02 CRS 013683); and (3) resisting and obstructing a law enforcement officer and assault on a law enforcement officer (02 CRS 013684). We find no error on 02 CRS 013682 and 02 CRS 013683, arrest judgment on 02 CRS 013684 and remand for resentencing.

## I. Background

The State's evidence tended to show that around 11:00 p.m. on 16 February 2002, Agents Jason Locklear ("Agent Locklear") and Ralph Nolan ("Agent Nolan") (collectively, "the Agents") of the North Carolina Alcohol Law Enforcement Division ("ALE") witnessed defendant leaving a convenience store and walking down the street. Agent Locklear believed he saw defendant carrying a twelve ounce malt beverage bottle, but could not determine whether it was opened.

The Agents stopped defendant on the street and Agent Locklear identified himself as an ALE agent. Agent Locklear was wearing his uniform and badge. The Agents asked defendant if the bottle was open. During the exchange, Agent Locklear saw defendant place ten to twelve small white rocks into his mouth. Agent Locklear grabbed defendant and ordered him to empty his mouth. Defendant swallowed one time, then opened his mouth, which was empty. Defendant was searched and $427.00 in cash was found.

Agent Locklear told defendant a search warrant could be obtained to have his stomach pumped. Defendant responded by lying to the Agents about his name. The Agents explained to defendant that if he did not start telling the truth, he would be arrested. Defendant continued to give the Agents fictitious names. Agent Locklear then told defendant, "I'm going to take you to the Magistrate's Office and see if the magistrate can determine exactly who you are." Defendant turned and ran from the Agents.

Agent Locklear chased defendant for about forty minutes. During the chase, Agent Locklear yelled at defendant that he was under arrest and to stop. Agent Nolan chased defendant for a few minutes before returning to secure their patrol car. During the chase, Agent Locklear caught up with defendant four times. The first time, Agent Locklear hit defendant in the forehead and sprayed him with pepper spray. On the second time, after a homeowner chased defendant off his porch, Agent Locklear tackled defendant and again sprayed him with pepper spray. Defendant punched Agent Locklear in the face and escaped. During the third time, Agent Locklear caught up with defendant and struck him with a metal baton on his leg causing defendant to fall down. Defendant regained his footing and jumped into a roadside canal. The canal water varied from knee deep to chest high.

Finally, Agent Locklear trapped defendant in the canal. He continued to tell defendant that he was under arrest and that he was going to handcuff him. As Agent Locklear approached with the handcuffs, defendant reached into his pants and told Agent Locklear that he had defecated on himself and would smear the excrement on him if he came closer. Agent Locklear continued to approach and defendant smeared feces over Agent Locklear's chest, left arm, and both hands. Agent Locklear struggled with defendant and managed to place the handcuffs on him. Defendant vomited and tried to step on and hide the vomit's contents. Agent Locklear recovered a plastic bag from the pool of vomit with a rock-like substance inside it.

Defendant was taken to the hospital, where a hand wound was treated and his stomach was pumped. Five rock-like substances were recovered from defendant's stomach. All six objects removed from defendant tested positive for crack cocaine.

Defendant was tried by a jury for: (1) knowingly and willfully emitting human excrement at a law enforcement officer in the performance of his duties (malicious conduct by prisoner); (2) possession of cocaine; and (3) resisting and obstructing a law enforcement officer and assault on a law enforcement officer. After the charge conference, defendant left the courtroom and did not return. An order for his arrest was issued. The jury found defendant to be guilty of: (1) knowingly and willfully emitting human excrement at a law enforcement officer in the performance of his duties (malicious conduct by prisoner); (2) possession of cocaine; and (3) resisting and obstructing a law enforcement officer and assault on a law enforcement officer.

Defendant was later arrested and returned to the courtroom. He was found to be a Level IV offender for sentencing purposes and sentenced in the presumptive range of twenty-five months minimum to thirty months maximum. Defendant appeals.

## II. Issues

The issues on appeal are whether: (1) the indictment for resist, obstruct, and delay was sufficient; (2) the State offered evidence for each element of malicious conduct by prisoner; (3) the trial court erred in instructing the jury on malicious conduct by prisoner; and (4) defendant is a Level IV Offender.

## III. Sufficiency of an Indictment

[1] Defendant contends the bill of indictment charging him with resist, delay, or obstruct an officer under N.C. Gen. Stat. § 14-223 was insufficient as a matter of law. We agree.

The purpose of an indictment is to provide "sufficient detail to put the defendant on notice as to the nature of the crime charged and to bar subsequent prosecution for the same offense in violation of the prohibitions against double jeopardy." *State v. Burroughs*, 147 N.C. App. 693, 695-96, 556 S.E.2d 339, 342 (2001) (citing *State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996)). It must include all the facts necessary to meet the elements of the offense. *State v. Alston*, 310 N.C. 399, 407, 312 S.E.2d 470, 475 (1984). If it does not, the trial court lacks jurisdiction over the defendant and subsequent judgments are void and must be vacated. *State v. Wagner*, 356 N.C. 599, 601, 572 S.E.2d 777, 779 (2002).

N.C. Gen. Stat. § 14-223 (2003) provides, "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." An indictment fails under N.C. Gen. Stat. § 14-223 if it does not describe the duty the named officer was discharging or attempting to discharge. *State v. Dunston*, 256 N.C. 203, 204, 123 S.E.2d 480, 481 (1962) (citing *State v. Stonestreet*, 243 N.C. 28, 89 S.E.2d 734 (1955); *State v. Harvey*, 242 N.C. 111, 86 S.E.2d 793 (1955); *State v. Eason*, 242 N.C. 59, 86 S.E.2d 774 (1955)).

Here, the bill of indictment charging defendant with violating N.C. Gen. Stat. § 14-223 stated, "the defendant named above unlawfully and willfully did resist, obstruct and delay Agent Jason Locklear of North Carolina Alcohol Law Enforcement Division while he was

attempting to discharge his duties of his office to wit: by running from Agent Jason Locklear and fighting Agent Jason Locklear."

The indictment fails to describe the duties Agent Locklear was discharging or attempting to discharge. The trial court never had jurisdiction over defendant on this charge. *Wagner*, 356 N.C. at 601, 572 S.E.2d at 779. The judgment is void and arrested for lack of jurisdiction.

## IV.  Malicious Conduct by Prisoner

**[2]** Defendant asserts the trial court erred by denying his motion to dismiss the charge of malicious conduct by prisoner. We disagree.

### A.  Standard of Review

The standard of review·for a motion to dismiss in a criminal trial is:

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential ele-ment of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is·properly denied.

*State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995) (citing *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury. *State v. Williams*, 319 N.C. 73, 79, 352 S.E.2d 428, 432 (1987) (quoting *State v. Young*, 312 N.C. 669, 680, 325 S.E.2d 181, 188 (1985)). But, "[i]f the evi-dence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Powell*, 299 N.C. at 98, 261 S.E.2d at 117 (citations omitted).

In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995). The trial court

must also resolve any contradictions in the evidence in the State's favor. *State v. Lucas,* 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness's credibility. *Id.* It is concerned "only with the sufficiency of the evidence to carry the case to the jury." *State v. Lowery,* 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983). Ultimately, the court must decide whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *Powell,* 299 N.C. at 99, 261 S.E.2d at 117.

### B. Analysis

Malicious conduct by prisoner is defined as:

(1) the defendant threw, emitted, or caused to be used as a projectile a bodily fluid or excrement at the victim; (2) the victim was a State or local government employee; (3) the victim was in the performance of his or her State or local government duties at the time the fluid or excrement was released; (4) the defendant acted knowingly and willfully; and (5) the defendant was in the custody of the Department of Correction, the Department of Juvenile Justice and Delinquency Prevention, any law enforcement officer, or any local confinement facility (as defined in G.S. 153A-217, or G.S. 153A-230.1), including persons pending trial, appellate review, or presentence diagnostic evaluation, at the time of the incident.

*State v. Robertson,* 161 N.C. App. 288, 292-93, 587 S.E.2d 902, 905 (2003) (citing N.C. Gen. Stat. § 14-258.4 (2001)). Defendant concedes the State met its burden in all but one of the elements, "the defendant was in the custody . . . . "

### 1. Custody

Our research indicates there has been little discussion of this statute since its enactment on 1 December 2001. 2001 N.C. Sess. Laws ch. 360, §§ 1-2. This Court has extended its use to both a prisoner within a correctional facility and an individual placed under arrest. *See State v. Smith,* 163 N.C. App. 771, 594 S.E.2d 430 (2004) (defendant spat on a correctional officer while incarcerated); *see also State v. Cogdell,* 165 N.C. App. 368, 371, 599 S.E.2d 570, 572 (2004) (defendant was "unruly and verbally abusive, and . . . spat at the [arresting] officer"). The issue before us is whether evidence shows defendant was "in custody" when he smeared fecal matter on Agent Locklear.

Defendant asserts the "custody" determination here should mirror the analysis involving the Fifth Amendment right against self-incrimination and the protections afforded by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966) (whether *Miranda* warnings are necessary prior to police questioning an individual hinges upon whether the individual is "in custody"). "[I]n determining whether a suspect [is] in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997).

The State contends the "custody" determination should be based upon whether an individual has been "seized" in relation to the Fourth Amendment. The State asserts the appropriate analysis involves the defendant's "free to leave test." *See State v. Buchanan*, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001). The question becomes whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, *reh'g denied*, 448 U.S. 908, 65 L. Ed. 2d 1138 (1980); *State v. Johnson*, 317 N.C. 343, 360, 346 S.E.2d 596, 606 (1986). Our Supreme Court has acknowledged that the Fourth Amendment analysis is "broader" than that involving the Fifth Amendment. *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828.

We recognize that "custody" determinations involving *Miranda* result from constitutional protections afforded those being interrogated about alleged criminal conduct. The goal is to prevent overreaching by the police in violation of an individual's Fifth Amendment rights. *See Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 706-07. Thus, the *Miranda* "custody" test defendant seeks to apply here is narrowly drawn due to the constitutional implications involved. In contrast, it is clear that the purpose behind N.C. Gen. Stat. § 14-258.4 is to protect an "employee of the State or local government while the employee is in the performance of the employee's duties" from individuals who may "throw[], emit[], or cause[] to be used as a projectile, bodily fluids or excrement." Based on our review of cases involving both analyses, we hold the broader Fourth Amendment "free to leave test" is to be applied to determine whether an individual was "in custody" under N.C. Gen. Stat. § 14-258.4.

### a. Analysis

" 'Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' " *Gaines*, 345 N.C. at 663, 483 S.E.2d at 406 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16 (1968)). Our Supreme Court accepted several instances that the United States Supreme Court has recognized that would indicate "a reasonable person" would *not* feel free to leave the presence of a police officer. *See State v. Farmer*, 333 N.C. 172, 187-88, 424 S.E.2d 120, 129 (1993) ("threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled") (quoting *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509).

Here, substantial evidence shows that at the moment defendant smeared fecal matter on Agent Locklear, "a reasonable person would have believed that he was not free to leave." *See Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509. Agent Locklear initially told defendant that he was going to take him to the magistrate's office. Agent Locklear chased defendant for forty minutes, hit defendant in the forehead, tackled him, emptied a can of pepper spray in defendant's face, struck defendant's leg with a metal baton, and eventually cornered defendant in a water-filled canal. During the entire chase, Agent Locklear "talked to [defendant] several times, telling him to get down" and that "he was under arrest." In the canal, Agent Locklear approached defendant with his handcuffs in view, explaining that he "was under arrest." At that point, defendant used his right hand to smear fecal matter on Agent Locklear. It is apparent from Agent Locklear's conduct and voice commands that defendant was not "free to leave."

Analyzed in the light most favorable to the State and providing the State the benefit of every reasonable inference, substantial evidence exists to show defendant was "in the custody of . . . [a] law enforcement officer" when he smeared his feces on Agent Locklear. The trial court properly denied defendant's motion to dismiss the charge of malicious conduct by prisoner, N.C. Gen. Stat. § 14-258.4. This assignment of error is overruled.

### V. Jury Instructions

[3] Defendant contends the trial court erred in instructing the jury on the custodial element of malicious conduct by prisoner. We disagree.

This Court is required to consider and review jury instructions in their entirety. *Robinson v. Seaboard System Railroad, Inc.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). The trial court's charge to the jury "will not be dissected and examined in fragments." *Id.* (citing *Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967)). The party assigning error to the instructions must show "that such error was likely, in light of the entire charge, to mislead the jury." *Robinson*, 87 N.C. App. at 524, 361 S.E.2d at 917 (citations omitted).

At the time of defendant's trial, no pattern jury instructions existed for a charge under N.C. Gen. Stat. § 14-258.4. Thus, the trial court provided the following instruction on "in custody" to the jury:

> A person is in custody, within the meaning of this statute, when a law enforcement officer advises him that he is under arrest or when the law enforcement officer, with the intent to make an arrest, makes verbal commands to a suspect, which commands a reasonable and prudent person under the same or similar circumstances to know that he was under arrest. When so advised, a suspect is under arrest and in custody even if the officer has not actually physically obtained complete control of the suspect.

We hold these instructions pertaining to the element of "in custody," taken in their entirety, conform with our previous holding. The test is whether a reasonable person would have felt free to leave under the circumstances.

In light of our application of the "free to leave test" concerning the custody element of N.C. Gen. Stat. § 14-258.4, defendant has failed to show, and our review of the record and transcript does not indicate that the instructions to the jury were misleading. This assignment of error is overruled.

## VI.  Prior Record Level

[4] Defendant argues the trial court erred in determining defendant was a Level IV offender for sentencing purposes due to his prior record. We disagree.

N.C. Gen. Stat. § 15A-1340.14(f) (2003) provides in part that, "[a] prior conviction shall be proved by any of the following methods: (1) Stipulation of the parties. . . ." In *State v. Lowe*, this Court found no error where "the State submitted to the court a prior criminal record and that the court considered the record to be reliable." 154 N.C. App. 607, 610, 572 S.E.2d 850, 853 (2002). In *State v. Rich*, a "computerized

record contained sufficient identifying information with respect to defendant to give it the indicia of reliability." 130 N.C. App. 113, 116, 502 S.E.2d 49, 51, *cert. denied*, 349 N.C. 237, 516 S.E.2d 605 (1998).

At defendant's sentencing proceeding, the State tendered defendant's prior conviction worksheet to the trial court. The trial court then asked defense counsel, "[h]ave you seen the worksheet?" Defense counsel responded, "I have, your Honor. We stipulate to that." The trial court offered defendant an opportunity to address the court, which defendant did. He did not object or refer to his prior convictions. Under N.C. Gen. Stat. § 15A-1340.14(f)(1), we hold defendant's prior convictions were sufficiently proved to warrant a Level IV sentencing. This assignment of error is overruled.

## VII. Conclusion

The judgment pertaining to the charge of resist, delay, or obstruct an officer under N.C. Gen. Stat. § 14-223 is void and is arrested for insufficiency of the bill of indictment. The trial court properly denied defendant's motion to dismiss related to the "custody" element of malicious conduct of prisoner, N.C. Gen. Stat. § 14-258.4. The trial court did not err in instructing the jury on the element of "custody." Defendant was properly sentenced as a Record Level IV offender.

No error in 02 CRS 013682 and 02 CRS 013683.

Judgment in 02 CRS 013684 is arrested and vacated and Remanded for Resentencing.

Judges WYNN and McGEE concur.