HUNTER, JR., Robert N., Judge.
Grant Ronnie William McNair ("Defendant") appeals his 19 April 2016 conviction for resisting, delaying, or obstructing a public officer and for operating a motor vehicle on a street or highway without being licensed. Defendant contends the charging document was insufficient to confer subject-matter jurisdiction on the trial court and argues the court erred in sentencing him as a level III misdemeanor offender without sufficient proof of his prior convictions. We agree and vacate Defendant's conviction for resisting, delaying, and obstructing a public officer and remand Defendant's conviction for operating a motor vehicle on a street or highway without a license to the trial court for resentencing.
I. Facts and Background
On 31 August 2013, State Highway Patrol Trooper Scott Casner ("Trooper Casner") arrested Defendant and issued two citations charging him with (1) operating a motor vehicle on a street or highway without a license, and (2) resisting, delaying, and obstructing a public officer. The second citation alleged Defendant did "resist[,] delay[,] and obstruct Trp. S. M. Casner, a public officer holding the office of state trooper by failing to obey lawful command to exit the vehicle while the officer was discharging and attempting to discharge a duty of his office" under N.C. Gen. Stat. § 14-223.
On 16 January 2015, the Pamlico County District Court found Defendant guilty of both charges. The court consolidated the charges, sentenced Defendant to ten days in jail, and ordered him to pay court costs. Defendant gave notice of appeal to the Superior Court.
On 27 April 2015, Defendant waived his right to publically appointed counsel before the District Court. Defendant's privately retained attorney moved to withdraw on the same day. On 1 May 2015, the court allowed the withdrawal. On 27 July 2015, Defendant waived his right to counsel before the Superior Court.
On 19 April 2016, the case came for trial in Superior Court. The evidence tended to show the following. Trooper Casner testified first for the State. While patrolling State Highway 55, Trooper Casner observed Defendant driving approximately 35 miles per hour in a 55 miles per hour zone, swerving within his lane, swerving between lanes, and failing to use turn signals. He activated his lights and dashboard camera and executed a traffic stop. Upon approaching and seeing no additional signs of impairment, Trooper Casner asked Defendant for his driver's license and registration. He checked the license on his patrol car's computer and found it was inactive. Trooper Casner then cited Defendant for operating a motor vehicle on a street or highway without a license and wrote Defendant a warning for unsafe movement.
Returning to Defendant's vehicle with the traffic citations, Trooper Casner noticed Defendant had opened the driver's side door and was sitting with his feet and knees pointed outward. Trooper Casner felt this was a threat to his safety and ordered Defendant to close the door. When Defendant failed to do so, Trooper Casner put Defendant's warning and citation in the bed of Defendant's truck, and repeated his command for Defendant to close his car door. When Defendant failed to comply, Trooper Casner told him he was under arrest. Defendant then slammed his door. Trooper Casner opened the door and Defendant "clenched" his hands together, making it difficult for Trooper Casner to apprehend him. A struggle ensued as Trooper Casner tried to remove Defendant from the car. Trooper Casner eventually subdued Defendant with a taser and handcuffed him with the help of Deputy Dewayne Cobb. The video camera in Trooper Casner's patrol car recorded the entire incident, and the State played the video for the jury.
After the close of the State's evidence, the trial court considered the evidence sua sponte , found there was sufficient evidence to support each element of the charges, and denied any motion to dismiss.
Defendant then took the stand in his own defense. He testified he thought he was driving in a 45 mile per hour zone when Trooper Casner stopped him. He also stated he was swerving because he couldn't see the painted lines on the road due to bright headlights behind him. As to his invalid license, Defendant claimed he had paid a traffic ticket which the Department of Motor Vehicles had failed to timely process. Defendant also testified he did not comply with Trooper Casner because he could not hear him. Defendant stated he began "fighting for his life" after Trooper Casner threw him to the ground.
Defendant then rested his case. The trial court renewed its own motion to dismiss and denied it. The court conducted the charge conference, and after the parties gave closing statements, instructed the jury. The jury subsequently found Defendant guilty of both charges. Upon sentencing, the following colloquy occurred:
THE COURT: State pray judgment?
[PROSECUTOR]: Yes, sir.
THE COURT: Do you have a record worksheet?
[PROSECUTOR]: I do. Yes, sir.
THE COURT: Have you shown it to Mr. McNair?
[PROSECUTOR]: I have not.
[DEFENDANT]: Yes, sir.
THE COURT: State want to be heard on the judgment?
[PROSECUTOR]: No, sir, Judge.
Well briefly, just this was very, as I said just making a mountain out of a mole hill. It could have been very, very simple and instead it went very, very serious.
THE COURT: Anything else?
[PROSECUTOR]: No, sir.
THE COURT: Mr. McNair, do you wish to be heard on sentencing, please, sir?
[DEFENDANT]: Yes, sir.
THE COURT: Glad to hear you, sir.
[DEFENDANT]: All I got to say, you know, I thought I was an innocent man.
Say, I was made a plea deal yesterday, you know, just pay the cost of court.
I feel like I was an innocent man didn't want to do it, you know. So all I had to pay $300 and walk, you know, but I just ask the Court, you know, just somebody innocent trying to prove them self you know. I don't see where it was no violent crime. I'm the one that suffered injury to it.
I didn't, minding my own business and I just, ask the Court to understand, you know.
That's all I can do, you know. I don't, I don't know what to say you know, I really don't.
THE COURT: All right. They are both Class Two misdemeanors. He is a level III, 60 days in each, one to run consecutive one another.
He's in your custody.
Defendant gave notice of appeal in open court.
II. Jurisdiction
Defendant appeals the final judgment of the superior court after entering a plea of not guilty. As a result, this Court has jurisdiction to hear the appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
III. Standard of Review
Defendant first contends the court lacked subject-matter jurisdiction as it was not conferred by the charging document. "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." McKoy v. McKoy , 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).
Defendant also contends the court erred in sentencing Defendant as a level III misdemeanor as there was not sufficient proof of prior convictions. "When a defendant assigns error to the sentence imposed by the trial court, our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.' " State v. Deese , 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1) (2015) ).
IV. Analysis
A. Subject-Matter Jurisdiction
Defendant first contends the citation charging him with resisting, delaying, or obstructing an officer under N.C. Gen. Stat. § 14-223 was insufficient to grant the trial court subject-matter jurisdiction. We agree.
In a criminal case, jurisdiction to try an accused "depends upon a valid bill of indictment guaranteed by Article I, Section 22 of the North Carolina Constitution." State v. Snyder , 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996).[1] The purpose of the indictment is to provide the Defendant with "sufficient detail to put the defendant on notice as to the nature of the crime charged and to bar subsequent prosecution for the same offense in violation of the prohibitions against double jeopardy." State v. Burroughs , 147 N.C. App. 693, 695-96, 556 S.E.2d 339, 342 (2001). To that end, a criminal pleading must contain:
[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
N.C. Gen. Stat. § 15A-924(a)(5) (2015). Further, when the charging document is a criminal summons, warrant, magistrate's order, or a statement of charges based on one of the foregoing, "both the statement of the crime and any information showing probable cause which was considered by the judicial official and which has been furnished to the defendant must be used in determining whether the pleading is sufficient to meet the foregoing requirement." N.C. Gen. Stat. § 15A-924(a)(5). Therefore, a valid indictment or charging instrument must allege "all the facts necessary to meet the elements of the offense." State v. Ellis , 168 N.C. App. 651, 655, 608, 608 S.E.2d 803, 806 (2005).
Defendant was charged under N.C. Gen. Stat. § 14-223, which states, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." Therefore, a citation or indictment for the charge of resisting a public officer must "1) identify the officer by name, 2) indicate the official duty being discharged, and 3) indicate generally how defendant resisted the officer." State v. Swift , 105 N.C. App. 550, 553, 414 S.E.2d 65, 67 (1992).
In distinguishing the offense of resisting an officer from the offense of assault on an officer, we previously observed "the resisting of the public officer in the performance of some duty is the primary conduct proscribed by that statute and the particular duty that the officer is performing while being resisted is of paramount importance and is very material to the preparation of the defendant's defense[.]" State v. Waller , 37 N.C. App. 133, 135, 245 S.E.2d 808, 810 (1978) (internal citation omitted).
Thus, where a general description is sufficient to sustain an indictment for assault on an officer, an indictment for resisting an officer is insufficient without a specific description of the official duty the officer was attempting to discharge at the time of arrest. Id. at 135-36, 245 S.E.2d at 810-11. For instance, in Ellis , this Court vacated a judgment where the indictment merely stated the defendant resisted while the law enforcement officer was "attempting to discharge his duties of his office...." 168 N.C. App. at 655-56, 608 S.E.2d at 806. Conversely, in State v. Fenner , the North Carolina Supreme Court upheld a citation which alleged the defendant resisted a deputy sheriff as he was "placing the defendant ... under arrest and attempting to take him into custody and transport his person to the Craven County Jail [.]" 263 N.C. 694, 699, 140 S.E.2d 349, 353 (1965).
In this case, the citation charging Defendant with resisting, delaying, and obstructing an officer states only that Trooper Casner was "discharging and attempting to discharge a duty of his office." This description fails to describe the particular duty Trooper Casner was discharging or attempting to discharge at the time Defendant refused to exit his vehicle. Consequently, we hold the citation is fatally defective and conclude the trial court did not possess jurisdiction over Defendant on this charge. Therefore, we vacate the judgment of resisting, delaying, or obstructing a public officer.
B. Sentencing
Because Defendant was also charged and sentenced for operating a motor vehicle on a street or highway without a license, we proceed to review his sentencing. Although Defendant failed to raise an objection during sentencing, an error at sentencing is not considered an error at trial for the purpose of Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, and we may review such errors without an objection below. State v. Canady , 330 N.C. 398, 401-402, 410 S.E.2d 875, 877 (1991).
Defendant contends the trial court erred in sentencing him as a level III misdemeanor offender because the State offered insufficient proof of his prior misdemeanor convictions. We agree.
At sentencing, the burden is on the State to prove, by a preponderance of the evidence, "a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." State v. Eubanks , 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002) (quoting N.C. Gen. Stat. § 15A-1340.14(f) (2015) ). Prior convictions can be proved by any of the following methods:
(1) Stipulation of the parties.
(2) An original or copy of the court record of the prior conviction.
(3) A copy of the records maintained by the Department of Public Safety, the Division of Motor Vehicles, or of the Administrative Office of the Courts.
(4) Any other method found by the court to be reliable.
N.C. Gen. Stat. § 15A-1340.14(f) (2015).
Standing alone, a sentencing worksheet prepared by the State listing a defendant's prior convictions is insufficient proof of those convictions. State v. Alexander , 359 N.C. 824, 827, 616 S.E.2d 914, 917 (2005). Nonetheless, the State contends Defendant stipulated to the worksheet by failing to object when it was offered into evidence.
"A stipulation does not require an affirmative statement and silence may be deemed assent in some circumstances, particularly if the defendant had an opportunity to object and failed to do so." State v. Wade , 181 N.C. App. 295, 298, 639 S.E.2d 82, 85-86 (2007) (citing Alexander , 359 N.C. at 828-29, 616 S.E.2d at 917-18 ). However, in order for silence to serve as an assent, the circumstances and record of the case must indicate Defendant was aware of the sentencing worksheet and acknowledged its contents. Alexander , 359 N.C at 830, 616 S.E.2d at 918.
Here, the record bears no indication Defendant was aware of or otherwise acknowledged the contents of the sentencing worksheet provided by the State prior to sentencing. During the colloquy, the State admitted Defendant had not seen the worksheet, and the transcript contains no evidence the State subsequently provided it to Defendant. Further, the record shows the worksheet does not bear Defendant's signature. At the same time, while the trial court asked Defendant if he wished to be heard on sentencing, Defendant's statement does not indicate he was aware of or otherwise acknowledged the contents of the worksheet. Thus, the record contains no evidence from which we can infer Defendant's stipulation to his prior convictions. Because we hold Defendant did not stipulate to his prior record level, and the State offered no other competent evidence under N.C. Gen. Stat. § 15A-1340.14(f) to prove the existence of Defendant's prior convictions, we conclude Defendant is entitled to a new sentencing hearing. State v. Boyd , 200 N.C. App. 97, 105, 682 S.E.2d 463, 468 (2009).
VACATED AND REMANDED FOR A NEW SENTENCING HEARING.
Report per Rule 30(e).
Judges CALABRIA and BERGER concur.

Whether the charging document is an indictment or a citation does not affect our analysis. See State v. Wells, 59 N.C. App. 682, 684-85, 298 S.E.2d 73, 75 (1982) (holding the uniform citation was fatally defective where it failed to indicate the specific duty the charging officer was attempting to discharge under N.C. Gen Stat. § 14-223 ).